OXON HILL RECREATION CLUB, INC. v. WATER
RESOURCES ADMINISTRATION ET AL.

[No. 38, September Term, 1977.]

*Decided July 20, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Edward John Skeens* for appellant.

*Earl G. Schaffer, Assistant Attorney General,* with whom were *Warren K. Rich, Assistant Attorney General* and *Francis B. Burch, Attorney General,* on the brief, for appellee Water Resources Administration.

*Richard S. Alper, Associate County Attorney,* with whom were *James C. Chapin, County Attorney, Michael O. Connaughton, Deputy County Attorney,* and *David S. Bliden, Associate County Attorney,* on the brief, for appellee Prince George's County, Md.

SINGLEY, J., delivered the opinion of the Court.

This case is, in a sense, a companion to that of *Oxon Hill Recreation Club, Inc. v. Prince George's County, Maryland,* 281 Md. 105, 375 A. 2d 564 (1977), since it is the vehicle utilized for an attack by Oxon Hill Recreation Club, Inc. (Oxon Hill) on the proposed construction of a new bridge by Prince George's County (the County) made necessary by the relocation of Tucker Road.

The background of the case may be briefly stated. In June, 1975, the County filed with Water Resources Administration, Department of Natural Resources (the Administration) an application for the construction of a new bridge over Henson Creek, approximately 250 feet downstream from the existing bridge. In November, the application was denied, primarily because the design of the new bridge was such that the stream bed would silt, necessitating constant maintenance, which might have to be performed in the stream bed itself, and could involve the use of heavy equipment in the stream.

The County then requested the Administration to reconsider the denial of the permit, because the proposed bridge had been designed some time ago, and a re-design would involve substantial additional expenses, and thereafter agreed to four conditions imposed by the

Administration: (i) a reduction of the channelization of the creek from 875 feet to 480 feet; (ii) the assumption by the County of all responsibility for the maintenance of the channel, without the use of heavy equipment in the stream bed; (iii) the development, in concert with the Administration, of new design criteria for future waterway projects, and (iv) compliance, in the future, with the new criteria.

In March, 1976, the Administration issued the permit, containing various conditions, including:

> "The Applicant shall maintain in condition as completed the structure or banks along the stream passing through this construction site after completion of construction. Any undercutting, meandering or degrading of the channel or deposition of material will be corrected by the Applicant as directed or approved by the Administration. No motor driven construction equipment will be allowed within the stream channels."

Conditions (iii) and (iv), agreed to by the County, were later reduced to writing but have yet to be adopted by the Administration as formal regulations.[1]

Oxon Hill, apparently fearful that the construction of the bridge would so alter the flood plain as to lead to flooding and consequent damage to its swimming pool, opposed the issuance of the permit before the Administration and appealed the issuance of the permit to the Board of Review of the Department of Natural Resources. When the Board of Review upheld the issuance of the permit, a further appeal was taken to the Circuit Court for Prince George's County, in which the County was permitted to intervene. From an order of that court affirming the action of the Board of Review, Oxon Hill appealed to the Court of Special Appeals.

---

1. The County agreed to (i) and (ii) prior to the issuance of the permit; (iii) and (iv) are the subject of an ongoing study.

We granted certiorari before the case came on for hearing in that court.

Before us, Oxon Hill posited its case on two arguments: (i) that the Administration exceeded its authority when it issued a conditional permit and (ii) that the Board of Review's finding that the proposed bridge would not affect "the habitat, flooding, erosion, sedimentation and stability of the Henson Creek stream channel" was not supported by substantial evidence.[2]

For practical purposes, these contentions may be considered together. At the outset, we must point out that our review of actions taken or determinations made by an administrative agency like the Department of Natural Resources is narrowly limited. Our inquiry is almost always limited to whether there was illegality, arbitrariness or unreasonableness in the action which was taken; *Williams v. Public Service Comm'n,* 277 Md. 415, 419, 354 A. 2d 437, 439 (1976); *Department of Nat. Res. v. Linchester,* 274 Md. 211, 226, 334 A. 2d 514, 524 (1975); *Public Service Comm'n v. Baltimore Gas & El.,* 273 Md. 357, 361, 329 A. 2d 691, 694 (1974); *Baltimore Gas Co. v. McQuaid,* 220 Md. 373, 382, 152 A. 2d 825, 829-30 (1959). Even challenges directed at the substantiality of the evidence must be tested by standards of arbitrariness and capriciousness, *Department of Nat. Res. v. Linchester, supra,* 274 Md. at 228. *See* Administrative Procedure Act, Maryland Code (1957, 1971 Repl. Vol.) Art. 41, § 255 (g); Maryland Rules B1-B12; *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 156 A. 2d 657 (1959); Tomlinson, *Constitutional Limits on the Decisional Powers of Courts and Administrative Agencies in Maryland,* 35 Md. L. Rev. 414 (1976). Code (1974) § 1-107 (2) of the Natural Resources Article subjects proceedings before the Board of Review of the Department of Natural Resources and judicial review of such proceedings to the provisions of the Administrative Procedure Act.

---

2. The language which is quoted appears in the Appellant's contention and not in the opinion of the Board of Review.

In a nutshell, it is not permissible for us to substitute our judgment for that of the agency, if its determination finds any support in the facts, *Neuman v. City of Baltimore*, 251 Md. 92, 99, 246 A. 2d 583, 587 (1968); *Board v. Oak Hill Farms*, 232 Md. 274, 280, 192 A. 2d 761, 764 (1963); *Snowden v. Mayor & C.C. of Balto.*, 224 Md. 443, 445, 168 A. 2d 390, 391 (1961). There was ample evidence from which the Administration could find that the conditions imposed in the permit were sufficient to preserve the public safety and promote the public welfare.

We see no reason why an administrative agency, acting within the scope of its powers, may not issue an approval based on conditions which are neither arbitrary nor unreasonable, nor may we disturb a determination supported by a reasonable finding of fact. Code (1974) § 8-807 of the Natural Resources Article provides:

> "(a) *Department procedure.* — Before acting on any permit application, the department shall weigh all respective public advantages and disadvantages and make all appropriate investigations. If the department believes from the evidence before it and based upon state water resources policy declared in this subtitle that the applicant's plans provide greatest feasible utilization of the waters of the state, adequately preserve public safety, and promote the general public welfare, it shall grant the permit to appropriate or use the waters, construct, reconstruct, or repair the proposed reservoir, dam, or waterway obstruction, or accomplish any combination of these objectives. If the department believes, from the evidence before it, that the proposed appropriation or use of state waters or proposed construction is inadequate, wasteful, dangerous, impracticable or detrimental to the best public interest, it may reject the application or suggest modifications to the proposed plans to protect the public welfare and safety.

"(b) *Conditions of grant.* — In granting any permit to appropriate or use water, or construct any reservoir, dam or waterway obstruction, the department may include any condition, term, or reservation concerning the character, amount, means and manner of the appropriation or use or method of construction necessary to preserve proper control in the state and insure the safety and welfare of the people of the state. The department may determine and specify what provisions to make, if any, in each permit granted to construct a dam or other waterwork for passage of fish."

Because we are fully in accord with the conclusion reached below that the Administration acted within its statutory powers, we shall affirm the judgment.

*Judgment affirmed, costs to be paid by appellant.*