JACK O. CHERTKOF, Trustee *v.* DEPARTMENT OF
NATURAL RESOURCES, WATER RESOURCES
ADMINISTRATION ET AL.

[No. 1253, September Term, 1978.]

*Decided July 9, 1979.*

The cause was argued before Moore, Mason and Liss, JJ.

*M. Natalie McSherry,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Thomas A. Deming, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Edward F. Lawson, Assistant Attorney General,* on the brief, for appellee Department of Natural Resources, Water Resources Administration.

*John M. Court, Assistant County Solicitor for Anne Arundel County,* with whom was *Richard Lazer Hillman, County Solicitor,* on the brief, for other appellee.

LISS, J., delivered the opinion of the Court.

This case arises out of an order of the Circuit Court for Anne Arundel County which dismissed an appeal by the appellant, Jack O. Chertkof. The appeal was from a decision of the Board of Review of the Department of Natural Resources that affirmed the appellee, Department of Natural Resources, Water Resources Administration's issuance of a waterway construction permit to Anne Arundel County. The appeal was noted in the Circuit Court for Anne Arundel County on March 12, 1976. Demurrers were filed by Anne Arundel County (hereinafter, the County) and the State of Maryland which were sustained with leave to amend on July 14, 1976. An amended petition was filed on August 16, 1976. Demurrers filed by the State and the County were overruled on November 9, 1976. The case came on for hearing on June 19, 1978. It was submitted on the basis of the record before the Department and a full and complete argument was held. On October 18, 1978, the trial court ordered that the amended petition for appeal be dismissed. It is from that order that this appeal was taken.

The permit issued by the Department of Natural Resources authorized Anne Arundel County to alter, in part, the course, current and cross section of Cabin Branch, and to construct a new roadway which would be necessitated by the changes made to Cabin Branch. Cabin Branch is a small intermittent stream in northern Anne Arundel County. The drainage area of Cabin Branch at the downstream end of the permit site consists of 1177 acres. The area lies to the northeast of the

Baltimore-Washington International Airport and encompasses parts of residential subdivisions known as "Shipley" and "Woodlawn Heights." Cabin Branch flows from west to east under the W.B.&A. railroad embankment, Maryland Route 648, Ritchie Street (not to be confused with Ritchie Highway), and thence, under Maryland Route 3 and on toward Curtis Creek.

The appellant owns a long tract of land in Anne Arundel County of approximately fifteen parcels totaling 150 acres that measure approximately four miles in length adjacent to and contiguous with Cabin Branch from headwaters to tidal waters. The controversy between the appellant, and the appellees dates back to 1970 when the County first began developing a series of storm drains and culverts which upon completion would drain into Cabin Branch. At that time, the appellant sought injunctive relief by way of a suit filed against the Department of Natural Resources requesting that the County be required to maintain Cabin Branch as a part of the storm water system of Anne Arundel County so as to prevent the creation of a nuisance and to provide adequate means for passing off the waters which would be concentrated and increased by the construction of the contemplated storm drains and culverts. Appellant also sought to have the Anne Arundel Circuit Court require the County to channelize Cabin Branch so that the waterway would be adequate to assume the expected increased flow. That action ultimately reached the Court of Appeals in the case of *Chertkof Trust v. Department of Natural Resources,* 265 Md. 291, 289 A. 2d 314 (1972). The appellant's complaint in that case was dismissed as premature because construction on the storm drains had not yet begun, and because the appellant failed to exhaust its administrative remedies by noting an appeal to the Board of Review of the Department of Natural Resources.

The first applications for permits involving Cabin Branch were filed by Anne Arundel County in 1971. Two applications were filed at that time. The first involved the application here in controversy. The second was an application to replace the culvert under the W.B.&A. embankment upstream from

appellant's property with a larger culvert. The latter application was withdrawn at the time of the 1973 hearing before the Water Resources Administration and was referred back to Anne Arundel County for restudy. The remaining application included the County's proposal to locate a new road, Burwood Road, along Cabin Branch between Route 648 and Ritchie Street. To implement the proposal, the County proposed to enlarge the existing culverts under Route 648, to erect a new one under Ritchie Street, and to construct a new channel for Cabin Branch extending easterly from Maryland Route 648 for approximately 1900 feet and then transecting into the existing channel of Cabin Branch. Appellant's property in the area of the Burwood Road project and downstream is flat. The stream channel is shallow. As a result, depending on the magnitude of storm related flow, a portion of the flat land would be included in the flood plain for Cabin Branch. No present development of any kind exists on the portion of appellant's land which might be affected by the occasional incidence of floodwaters.

In support of its permit application, the County, in the hearing before the Water Resources Administration, submitted engineering data which included an estimate of floodwaters in Cabin Branch resulting from a fifty-year storm event. After a lengthy hearing, the Administration concluded that the expected flow from the entire drainage area above the Burwood Road project site was estimated to be 1700 cubic feet per second (c.f.s.). This was on the assumption that the proposed new W.B.&A. culvert would freely pass such flows. Mr. Chertkof testified at the October, 1973 hearing before the Board of Review that he had his own expert verify the calculations of the County. As we read the transcript, Mr. Chertkof did not challenge the figure of 1700 c.f.s. but accepted this estimate. The Board determined that the Department properly had concluded that the culverts and channel of the Burwood Road project would safely carry such floodwaters. Appellant did not appeal this determination. The Board of Review also determined, however, that the Department had not considered sufficiently the impact of

additional fifty-year flood flows, attributable to the Burwood Road project itself, on downstream areas.

On the basis of this conclusion, the Board of Review remanded the application to the Department of Natural Resources for further investigation.

On remand, the Department requested and the County submitted a supplemental engineering report concerning the impact of floodwaters downstream from the project. Employing the formula used previously the engineers determined that in a fifty-year storm the Burwood Road project would contribute an additional forty c.f.s. to the 1700 c.f.s. flow. The consulting engineers (John E. Harms, Jr. and Associates, Inc.) calculated that this additional flow would increase stream depth by .25 inch and stream width by 14.5 inches. A rehearing on the issuance of the permit was held before the Board of Review on January 12, 1976, and at that rehearing the same engineers filed a supplemental report which showed an increase of depth in the channel of .25 inch, with a slight back-up at the existing culvert under Route 3 causing an increase in depth at that point of 2.5 inches. The corresponding increases in spread would be 1.5 feet in the channel as a whole and three feet at the Route 3 culvert.

On reviewing the engineers' report, an expert for the Department concluded that "the difference between flooding characteristics before and after this proposed project are so insignificant that it is impractical to measure the difference." Based on this evidence, the Board of Review concluded that the permit issued on July 7, 1975 had been properly issued.

It is from this action that the petition to the Circuit Court for Anne Arundel County was filed.

Appellant contends that there are four issues to be determined by this appeal. He states them to be as follows:

1. Was the lower court correct in affirming the decision of the Board of Review where that decision was based upon an assumption as to existing conditions, which assumption was unsupported by the evidence?

2. Was the lower court correct in affirming the decision of the Board of Review where that decision was based upon

testimony which assumed optimum future development rather than existing conditions?

3. Was the lower court correct in affirming the decision of the Board of Review where that decision failed to make any provision protecting appellant's property from the adverse effects of the project proposed?

4. Was the lower court correct in affirming the decision of the Board of Review, which decision considered only the isolated effects of one project, when that project is part of an overall scheme of development which will, in total, cause significant adverse effects to the appellant's property?

## 1 and 2

Appellant contends that the decision of the Board of Review as to the effect of the Burwood Road project was unsupported by any competent or substantial evidence. He suggests the reports of Harms and Associates were made on the basis of assumptions which were incorrect and without any basis in fact. In his argument to substantiate these conclusions, he offers his contention that the State neglected to consider the crucial distinction between theoretical runoff and actual streamflow. As a legal basis, he relies on *A. H. Smith Sand and Gravel Co. v. Department of Natural Resources,* 270 Md. 652, 313 A. 2d 820 (1974), which he says renders erroneous the Department's assessment of flood impacts downstream from Burwood Road on the basis of "expected" flows rather than "existing" flows. He suggests that the damming of floodwaters at the inadequate W.B.&A. culvert creates an "existing" fifty-year flood frequency at the Burwood Road project of a level (unspecified) far less than 1700 c.f.s., and that such a lower flood estimate should have been used in the Department's analysis of the permit.

We conclude from our reading of the record that the appellant never raised this issue before the Water Resources Administration or at the several hearings before the Board of Review, and that the issue was raised for the first time after the hearing in the Circuit Court on appeal by the filing of a fifteen-page memorandum which called the trial court's

attention to *A. H. Smith, supra,* and to appellant's belief that the 1700 c.f.s. determination was incorrect factually and legally. The memorandum was not made a part of the record in this case and is, therefore, not before us.

We think *A. H. Smith, supra,* is inapposite to the present case. The Court of Appeals explicitly limited its holding in that case when it said: "We are not obligated at this time to determine what should or should not be taken into consideration in planning. The issue here is a jurisdictional one insofar as the Department is concerned." 270 Md. at 665.

However, even if *Smith* were applicable, the appellant would be precluded from raising a theory in this appeal upon which it now relies for the first time. We have said innumerable times that except under unusual circumstances, we will abide by Maryland Rule 1085 which says, "This Court will not ordinarily decide any point or question which plainly does not appear by the record to have been tried and decided by the lower court." To permit appellant after nine years of controversy to raise an entirely new theory which was never espoused at any point in the long drawn out administrative process would make a mockery of the appellate process. A petitioner is bound to the theory he elects to pursue at trial. *Kasten Construction Co. v. Jolles,* 262 Md. 527, 278 A. 2d 48 (1971); *Brehm v. Philadelphia B. & W. R. Co.,* 114 Md. 302, 79 A. 592 (1911). This is particularly true in administrative proceedings in which a party must avail himself of the opportunity to present his position before the proper administrative body as failure to do so would preclude his being heard by a reviewing court. *Hathcock v. Loftin,* 179 Md. 676, 22 A. 2d 479 (1941). Similarly, in *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U. S. 519, 98 S. Ct. 1197 (1978), an environmental group raised written questions about the adequacy of administrative consideration of energy conservation alternatives. When the agency held a hearing on its draft environmental impact statement, the group did not participate. The United States Court of Appeals for the District of Columbia found that the agency had failed to consider adequately the points raised by the protesting group. The Supreme Court reversed and stated a philosophy

concerning administrative proceedings which we think is singularly appropriate in this appeal. The Court said:

> Indeed, administrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that "ought to be" considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated on the ground that the agency failed to consider matters "forcefully presented." [435 U. S. at 553-554]

In the case at bar, appellant did not refer to his contention now before this Court that some figure less than 1700 c.f.s. should be used as a basis for determining the downstream flood impact of the Burwood Road project until the point in the proceedings we heretofore noted. At the original hearing before the Board of Review in 1973, all parties concurred in accepting 1700 c.f.s. as an appropriate estimate for assessing the ability of the Burwood Road project to carry floodwaters and as a basis for analyzing downstream impact. *A. H. Smith, supra,* was decided in January, 1974, but there is no indication in the voluminous record in this case that appellant indicated his reliance on that decision to the County, the Department, or the Board of Review. Nor was the issue raised in appellant's comments on the engineering report of April, 1974, nor in appellant's request for a second hearing before the Board of Review. As late as January, 1976 at the second hearing before the Board of Review, appellant did not challenge the supplemental report of the engineering expert, but chose instead to offer no testimony. The appellant's petition of appeal to the Circuit Court mentions no alleged error in the acceptance of the Department's estimate of floodwaters at 1700 c.f.s.

It is not our function as an appellate court to consider issues not raised, considered or decided in the court below. Our review, particularly in appeals from administrative bodies, must be limited to the determination *based on the record.* We must necessarily limit our consideration to whether the

agency had before it substantial evidence to support its conclusions, and whether these conclusions were arbitrary, illegal or capricious. Considering the state of the record in this case and in deference to Rule 1085, we will not review the new issue raised by the appellant in this appeal. The record is more than sufficient to establish that the Board of Review had before it substantial evidence to support its conclusions, and we find nothing illegal, arbitrary or capricious in its actions.

### 3 and 4

Appellant next contends that the Board of Review acted arbitrarily in not requiring specified terms and conditions in connection with the construction permit in order to preserve existing conditions and to protect the property owned by appellant and others.

Section 8-807 (b) of the Natural Resources Article of the Maryland Code (1974) provides that where proposed construction is inadequate or detrimental to the public interest the Department *may* require modification of the plan or include any conditions or terms necessary in granting a permit. *See Oxon Hill Recreation Club, Inc. v. Water Resources Administration,* 281 Md. 110, 114, 375 A. 2d 567 (1977), where the Court of Appeals said, "It is not permissible for the Court to substitute our judgment for that of the agency if its determination finds any support in the facts," (citations omitted). The record, we find, amply supports the Board's decision not to require any conditions, and indicates that the Board recognized its obligation to public safety and welfare. According to the testimony before the Board, additional floodwaters attributable to the Burwood Road project were estimated to increase the width of out of channel flooding by at most one and one-half feet. Appellant's land adjoining the proposed Burwood Road project is flat, vacant and briar covered. Appellant offered no evidence to establish that the County's actions in Cabin Branch have increased runoff to an extent greater than that arising wholly from the changes in character of the surface "produced by the opening of streets, building of houses, and the like in the ordinary and

regular course of expansion." *See Kennedy-Chamberlin Development Co. v. Snure,* 212 Md. 369, 376, 129 A. 2d 142 (1957).

Appellant has offered no evidence that it has suffered any actual damage. Appellant has ignored the plain directive of the Court of Appeals in the case of *Chertkof Trust v. Department of Natural Resources, supra,* when the Court offered future guidance to the appellant and indicated that any claim for injunctive relief would have to be based on proof of specific damage and specific causes for that damage. The courts have ample general equity powers to deal with such damages if they occur in the future.

We have no quarrel with appellant's statement of the law that where a stream is adopted as an integral part of the public sewage or storm water system, the appropriate governmental body is required to maintain the stream in such a manner as to prevent damage to adjoining landowners. *City of Baltimore v. Landay,* 258 Md. 568, 267 A. 2d 156 (1970); *Kurrle v. City of Baltimore,* 113 Md. 63, 77 A. 373 (1910); *City of Baltimore v. Merryman,* 86 Md. 584, 39 A. 98 (1898); *Kranz v. City of Baltimore,* 64 Md. 491, 2 A. 908 (1886).

Unfortunately, appellant has not offered sufficient evidence to prove that Cabin Branch has become an integral part of the storm water system of Anne Arundel County; nor has he offered such evidence of damage to his property as would require the affirmative action of the County to avoid such damage.

*Judgment affirmed; costs to be paid by appellant.*