4 A.3d 1

Oscar SANDERS

v.

STATE of Maryland.

No. 1011, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Sept. 2, 2010.

Matthew H. Fogelson (Nancy S. Forster, Public Defender, on the brief) Baltimore, MD, for appellant.

Ryan R. Dietrich (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: EYLER, DEBORAH S., GRAEFF and PAUL E. ALPERT (Retired, Specially Assigned) JJ.

GRAEFF, J.

On May 29, 2008, a jury sitting in the Circuit Court for Baltimore City convicted Oscar Sanders, appellant, of motor vehicle theft, theft of property with a value over $500, and unauthorized use of a motor vehicle. The court imposed a sentence of 15 years, with all but eight years suspended, to be followed by five years of supervised probation.[1]

Appellant presents two questions on appeal, which we quote:

1. Did the trial court err by refusing to ask a voir dire question directed at uncovering bias specific to the theft of a motor vehicle?

2. Did the trial court err by limiting Appellant's opening statement and cross examination?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

---

1. For purposes of sentencing, the court merged the convictions for unauthorized use of a motor vehicle and theft of property with a value over $500 into the conviction for motor vehicle theft.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2008, Charles Donald Donahue parked his 2006 Ford Ranger in a parking space behind his rowhouse in Baltimore City. The next morning, January 23, 2008, as Mr. Donahue was leaving for work at approximately 8:00 a.m., he discovered that his vehicle was missing. He called the police and provided information about the car, including the license plate number.

Mr. Donahue testified that there were three sets of keys to the vehicle. He and his spouse each had one set, and the third set typically was kept in their home. On January 22, 2008, however, Mr. Donahue mistakenly left the third set of keys in the center console of the vehicle. He could not recall if he locked the doors to the car when he left his vehicle that day. Mr. Donahue had never met appellant, nor did he give him permission to drive his car.

Brian Bell, a Baltimore City police detective assigned to the Baltimore Regional Auto Theft Task Force, was admitted as an expert in the field of auto theft investigation. Detective Bell testified that on the morning of January 23, 2008, he and his partner, Detective Brian Ralph, responded to the parking lot of the Home Depot store in Reisterstown after members of his unit were "notified via 'Lojack' " about the location of the stolen vehicle. He explained that Lojack is a tracking device that allows police to track a vehicle when it is stolen.[2]

When Detective Bell arrived at the Home Depot, he observed the stolen vehicle as it was being driven through the parking lot. Detective Bell, along with his partner and other units of the Auto Theft Task Force, stopped the car. Appellant, the driver of the car, was arrested.

Detective Bell examined the car and did not find any damage to the steering column, which indicated that the vehicle was stolen through the use of a key. He observed that the key was in the ignition.

---

**2.** Detective Ralph explained that the Lojack system emits "a doppler wave signal" that enables the police to track a vehicle.

The police informed Mr. Donahue that they had found his car. When Mr. Donahue inspected it, he noted that items had been removed from the glove compartment and the console. He also found items in the vehicle that did not belong to him, such as a coffee cup and what appeared to be a "crack vial."

Appellant did not call any witnesses, nor did he testify on his own behalf. As indicated, the jury returned a guilty verdict on all three charges. This timely appeal followed.

## I.

### Voir Dire

Appellant contends that the trial judge abused his discretion when he refused to ask defense counsel's proposed voir dire question, which inquired whether any of the jurors had "strong feelings concerning motor vehicle theft ... that would render the juror unable to render a fair and impartial verdict." [3] Appellant argues that this question should have been asked because it was "directed at uncovering bias specific to the theft of a motor vehicle," and the other questions asked during voir dire were "not an acceptable substitute for a question designed to reveal bias specifically relating to the crime for which [he] was charged."

The State argues that the trial court did not abuse its discretion in refusing to ask this question. It contends that "an inquiry as to whether any potential juror holds strong feelings regarding a particular crime will only be warranted with respect to those crimes that tend generally to evoke

---

3. We have quoted the trial court's characterization of appellant's requested voir dire question. The record does not reflect the exact question proposed by appellant. During a hearing, defense counsel referred to "a few additional questions that were outlined in [his] voir dire." He specifically requested that the judge inquire if anyone had "such strong feelings that they would not be able ... to be fair," a question that he stated was "akin to question nine" of his proposed voir dire. Appellant's proposed voir dire, however, was not made part of the record on appeal. The parties address the issue using the trial court's characterization of the requested voir dire, and we shall do the same.

strong passions and prejudices that would affect a juror's ability to act in an impartial manner," and motor vehicle theft is not such a crime. Alternatively, the State argues that, even if motor vehicle theft is such a crime, the question was not required here because "any strong passions relating to the nature of the crime were simply not relevant," given that the sole issue was whether appellant was the individual who stole the vehicle. Finally, the State argues that the court did not abuse its discretion in refusing to ask the requested question because "any bias regarding motor vehicle theft would have been, and was, uncovered through the other questions that were asked during voir dire."

## A. Proceedings Below

Prior to trial, defense counsel requested that the court ask the prospective jurors during voir dire if any of the jurors had "strong feelings concerning motor vehicle theft . . . that would render the juror unable to render a fair and impartial verdict." In support of this request, counsel argued:

[DEFENSE COUNSEL]: Well, Your Honor, I believe . . . it's an appropriate question to ask. Motor vehicle theft may or may not have a strong stigma attached to it. If the juror believes that they cannot be fair based on mere accusation of the motor vehicle theft, have strong feelings about it that they would be appropriate for preemptory strikes and challenge for cause which is the object of voir dire and that's why we believe it's appropriate to ask that question.

THE COURT: Well, let me ask this question and then I'll let the State respond. It seems to me that the *Singfield* case [4] really speaks about the fact that a handgun was involved in the case and people do have strong feelings about handguns. Some people believe that everybody ought to be able to carry a handgun and defend themselves. Other people believe that no one should have handguns.

4. *Singfield v. State,* 172 Md.App. 168, 913 A.2d 671 (2006), *cert. denied,* 398 Md. 316, 920 A.2d 1060 (2007).

And given that strong feeling about handguns, especially in a murder case where one could have used a handgun to commit murder, but on the other hand one could have used a handgun to defend oneself. And if someone has strong feelings about handguns in the—let's say against handguns, they may not be able to distinguish between the lawful use of a handgun versus the unlawful use and probably would convict the person because that person used a handgun to defend himself or herself.

Another example would be domestic violence. Some folk can hear the word domestic violence and say, he's guilty because he's charged with domestic violence. Others are strong the other way because they know of someone who may have been falsely accused and I don't believe a word, "she said."

Where is that stigma that you gave some cursory attention to, to auto theft?

[DEFENSE COUNSEL]: Well, Your Honor, I would only suggest to the court that—well, in Baltimore City that there are significant high rate of auto thefts and it's not unprobable that the members of the panel will have—been the victims or known victims or otherwise slipped through the cracks of the court's other questions, but have strong feelings about the issue of auto theft.

And as it is the accusation and as the question is framed to determine whether or not an individual in their own belief cannot be fair, I believe it's an appropriate question to ask because it deals specifically with the allegation as being alleged here.

Defense counsel concluded: "I believe that there is a reasonable basis for asking the question given the prevalence of vehicle crime and the probability that individuals will have feelings about the issue. I believe that it's to the point . . . of this particular accusation and is merited."

The trial court declined to ask this question, explaining its ruling as follows:

And I'll back up to [proposed voir dire question nine] so the Appellate Court if it becomes necessary will understand that my reason for denying the question on motor vehicle theft pertains to *Singfield* as I found that *Singfield* really stressed the concerns about the handgun. And the court recognizes the stigma attached to handguns and that there are other cases such as have been mentioned during the course of these discussions such as domestic violence, drugs, child abuse which could be at times part of domestic violence, but other times it's not.

But those are examples of cases where there's a strong stigma attached just the very nature of the charge that inflames people, citizens one way or the other. And this is not that type where the court believes would warrant a question. The court instructing or informing the jury that it is a motor vehicle theft case and asking the questions that the court will ask will give a juror an opportunity to respond if there is a problem, but those are my reasons for not asking those questions.

The court then began voir dire of the prospective jurors as follows:

Case now under consideration is the State of Maryland versus Oscar Sanders, case number 808067010. Mr. Sanders is charged with unlawful taking [of] a motor vehicle, theft of property over $500 in value and related charges which [are] alleged to have occurred on January 23rd, 2008 in the 6600 block of Reisterstown Road in Baltimore City, the [S]tate of Maryland.

\* \* \*

I am going to ask you several questions in order to obtain certain information that may be helpful to the attorneys in the selection of a jury in this case.

\* \* \*

Has any member of the jury panel or a member of your immediate family ever been, part one, the victim of a crime, part two, accused of a crime, or part three convicted of a crime?

The court concluded voir dire by asking if "any member of the jury panel [knew] of any other reason not mentioned that would prevent [them] from listening to the evidence in this case and giving both sides a fair trial."

The trial judge subsequently spoke at the bench with prospective jurors who responded affirmatively to the inquiry regarding whether they or their family members had been a victim of a crime or accused or convicted of a crime. Several of the jurors explained that they or their family members had been victims of auto thefts or car-related crimes, and one prospective juror had a family member who had been convicted of auto theft. In each of these instances, the trial judge followed up with the prospective juror to determine if his or her previous experience would prevent the person from "listening to the evidence in this case and giving both sides a fair trial." Two jurors were stricken for cause when they indicated that they could not be fair and impartial in light of their experience.

### B. Scope of Voir Dire

■ Voir dire is the process used to protect a defendant's right to a fair and impartial jury, which is guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. *Stewart v. State*, 399 Md. 146, 158, 923 A.2d 44 (2007). *Accord Charles v. State*, 414 Md. 726, 733, 997 A.2d 154 (2010); *Moore v. State*, 412 Md. 635, 644, 989 A.2d 1150 (2010); *Wright v. State*, 411 Md. 503, 508, 983 A.2d 519 (2009); *Curtin v. State*, 393 Md. 593, 600, 903 A.2d 922 (2006). It is the mechanism through which the trial judge "fulfill[s] his or her responsibility to eliminate those prospective jurors who will be unable to perform their duty impartially." *White v. State*, 374 Md. 232, 240, 821 A.2d 459, *cert. denied*, 540 U.S. 904, 124 S.Ct. 262, 157 L.Ed.2d 189 (2003).

■ The purpose of voir dire in Maryland is to determine "the existence of cause for disqualification, and not as in many other states, to include the intelligent exercise of peremptory

challenges." *Stewart*, 399 Md. at 158, 923 A.2d 44. *Accord Curtin*, 393 Md. at 602–03, 903 A.2d 922.[5] During voir dire, the court should focus questions on " 'issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered.' " *State v. Logan*, 394 Md. 378, 396, 906 A.2d 374 (2006) (quoting *State v. Thomas*, 369 Md. 202, 207–08, 798 A.2d 566 (2002)). *Accord Charles*, 414 Md. at 734–45, 997 A.2d 154.

 The scope of voir dire and the form of the questions asked, however, "rest firmly within the discretion of the trial judge." *Stewart*, 399 Md. at 159, 923 A.2d 44. *Accord Wright*, 411 Md. at 508, 983 A.2d 519. Unless a question involves an area of mandated inquiry, a court's ruling regarding voir dire is reviewed under the abuse of discretion standard. *Stewart*, 399 Md. at 160, 923 A.2d 44; *Muhammad v. State*, 177 Md.App. 188, 310, 934 A.2d 1059 (2007), *cert. denied*, 403 Md. 614, 943 A.2d 1245 (2008). This standard has been explained as follows:

"Abuse of discretion" is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways. It has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the

---

5. In *Curtin*, the Court of Appeals explained that Maryland has adopted a more limited style of voir dire " 'because allowing more extensive inquiry would unduly tax the efficiency of Maryland's judicial system' " and result in a " 'decline in [the] ability [of other litigants] to gain prompt resolution of their litigation.' " 393 Md. 593, 604–05, 903 A.2d 922 (2006) (quoting *Davis v. State*, 333 Md. 27, 42, 633 A.2d 867 (1993)). The court quoted Judge Moylan's description of Maryland's policy choice regarding limited voir dire: " 'In a world of finite resources, if the fable "day in court" is permitted casually to multiply into twenty days in court, the inevitable consequence is that, by the inexorable law of mathematics, nineteen other litigants are denied any time in court at all....' " *Id.* at 605, 903 A.2d 922 (quoting *Davis*, 333 Md. at 42, 633 A.2d 867).

logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."

There is a certain commonality in all these definitions, to the extent that they express the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*King v. State,* 407 Md. 682, 697, 967 A.2d 790 (2009) (quoting *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025 (1994)).

In *Curtin,* 393 Md. at 609–10 n. 8, 903 A.2d 922, the Court of Appeals set forth areas of inquiry that are mandatory if reasonably related to the case. These areas include: (1) bias relating to race, ethnicity, or cultural heritage; (2) religious bias; (3) a juror's willingness to convict based on circumstantial evidence in capital cases; (4) placement of undue weight on police officer credibility; (5) violations of narcotics laws; and (6) strong emotional feelings regarding charges of sexual assault against a minor. *Id.*

Two of the mandatory areas of inquiry listed in *Curtin* involve questions regarding prospective jurors' feelings regarding specific offenses, in particular, violations of narcotics laws, *see State v. Thomas,* 369 Md. 202, 214, 798 A.2d 566 (2002), and sexual assault against a minor, *see Sweet v. State,* 371 Md. 1, 9, 806 A.2d 265 (2002). Additionally, in *Baker v. State,* 157 Md.App. 600, 613, 853 A.2d 796 (2004), this Court mandated inquiry into "whether any prospective juror had strong feelings about handguns that would have affected his or her ability to weigh the issues fairly." [6]

---

**6.** In *Moore v. State,* 412 Md. 635, 663–64, 989 A.2d 1150 (2010), the Court of Appeals added to the list of mandatory voir dire questions

As the State argues, and as the trial court noted, the cases where inquiry regarding the prospective jurors' strong feelings about the crime was required involved crimes that generally evoke strong emotions that could bias a potential juror. For example, in *Thomas*, 369 Md. at 204, 798 A.2d 566, the defendant was on trial for possession and distribution of cocaine. In finding an abuse of discretion in the trial court's refusal to ask the venire panel "if any of them harbored 'strong feelings regarding violations of the narcotics laws,' " the Court of Appeals noted the "unusual position" of laws regulating drug use:

"Laws regulating and prohibiting the use of controlled dangerous substances harbor an unusual position within our criminal code, such that jurors may be biased because of strong emotions relating to the dangers of narcotics and their negative effects upon our cities and neighborhoods, or, on the contrary, biases may exist because of passionate positions that advocate the decriminalization of narcotics."

*Id.* at 213, 798 A.2d 566 (quoting *Thomas v. State*, 139 Md.App. 188, 207, 775 A.2d 406 (2001)).

Similarly, in *Sweet*, 371 Md. at 9–10, 806 A.2d 265, where the defendant was charged with sexual child abuse, the Court of Appeals held that the trial court abused its discretion in refusing to ask the venire whether the charges "stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" The Court subsequently explained its reason for requiring this inquiry, emphasizing how the nature of the crime involved influenced its decision:

After reviewing the national effort to address crimes of violence and molestation committed against children in the United States and Maryland's response thereto, we held that it was an abuse of discretion for the trial judge to

---

designed to uncover bias based on a witness' status or affiliation. In that case, the Court held that the trial court erred in refusing to ask questions inquiring whether potential jurors would be more likely to believe a witness for the prosecution, as opposed to a witness for the defense, based merely on who called the witness. *Id.*

refuse to ask the proposed question because allegations of sexual abuse of a minor are capable of evoking strong feelings which, if uncovered, could constitute grounds for disqualification.

*Curtin,* 393 Md. at 609, 903 A.2d 922.

This Court subsequently expanded this reasoning to cases involving handguns, where an issue for the jury to resolve was whether the defendant used reasonable force. In *Baker,* 157 Md.App. at 604, 613, 853 A.2d 796, the defendant was charged with first and second degree assault and use of a handgun in the commission of a crime of violence based on his actions in shooting an unarmed man with a handgun. We held that the trial court abused its discretion in refusing to ask the prospective jurors if they "had strong feelings about handguns that would have affected his or her ability to weigh the issues fairly," stating:

> Here, appellant shot an unarmed man with a handgun, allegedly in self-defense or defense of his girlfriend. One of the facts the jury might have to decide was whether appellant used reasonable force. The trial court should have asked whether any prospective juror had strong feelings about handguns that would have affected his or her ability to weigh the issues fairly.

*Id.* at 613, 853 A.2d 796. We subsequently explained the rationale of this decision:

> "In *Baker,* jurors were required to consider (1) whether the defendant actually believed he was in immediate danger, and, if this belief was reasonable, (2) whether, by discharging his gun, the defendant used no more force than was reasonably necessary. Under those circumstances, a juror who believed that use of a handgun is never appropriate would not be able to give fair and impartial consideration to Baker's self-defense argument. At the same time, a juror with strong feelings in favor of handguns might have a 'shoot first, ask questions later' attitude that would unfairly prejudice the trial process. Therefore, under the circumstances in *Baker,* and in light of the reasonable use of force

argument Baker raised in his defense, a juror's strong feelings about the use of handguns was an essential area of inquiry."

*Singfield v. State,* 172 Md.App. 168, 176, 913 A.2d 671 (2006) (quoting *Curtin v. State,* 165 Md.App. 60, 69, 884 A.2d 758 (2005)), *cert. denied,* 398 Md. 316, 920 A.2d 1060 (2007).

In *Singfield,* where the defendant was charged with murder, this Court held that the trial judge erred in declining defense counsel's request to ask the prospective jurors whether they had "such strong feelings toward the use of handguns to commit murder that it would hinder their ability to render a fair and impartial verdict." *Id.* at 180–81, 913 A.2d 671. In that case, where the jury was instructed as to voluntary manslaughter and self-defense, the jury was presented with the issue whether Singfield used the handgun in a reasonable or justifiable way. *Id.* at 180, 913 A.2d 671. Accordingly, the voir dire question was reasonably likely to identify jurors with a bias related to the alleged criminal act that would impede their ability to render a fair and impartial verdict. *Id.* at 180–81, 913 A.2d 671.

In *Curtin,* 393 Md. at 609–13, 903 A.2d 922, the Court of Appeals made clear that a voir dire question regarding "strong feelings" about the charged crime was not mandatory in every trial. In that case, the defendant was charged with armed robbery and other offenses based on evidence that he and an accomplice robbed a bank while armed with a gun. *Id.* at 595–96, 903 A.2d 922. The Court addressed whether the trial court erred in declining to ask whether any prospective juror had "strong feelings concerning the use of handguns" that would interfere with the juror's ability to be fair and impartial.

Chief Judge Bell, in a dissenting opinion joined by Judge Raker, opined that the Court should "require, as a matter of policy, trial courts to ask, in every criminal trial, whether the prospective juror has such strong feelings about the charged crime as to make it difficult or impossible to weigh the facts

fairly." *Id.* at 619, 903 A.2d 922 (Bell, C.J., dissenting). The majority of the Court, however, did not agree.

The majority opinion held that the requested question was not mandated "merely because a handgun was used." *Id.* at 610, 903 A.2d 922. It noted that the issues for the jury to determine in that case were "whether Mr. Curtin was the perpetrator and whether the gun was real, not whether Mr. Curtin was legally in possession of a handgun, or used the handgun in a reasonable or justifiable way, situations which could, conceivably, evoke strong feelings about handguns." *Id.* at 613, 903 A.2d 922. The Court concluded that, "[w]hether a venireman has strong feelings about handguns would not render him or her more or less likely to convict Mr. Curtin of the charges on the evidence presented at trial, and therefore the trial judge did not abuse his discretion in refusing to ask the question." *Id.*

In *Curtin*, the Court set forth the standard for determining whether a proposed voir dire question must be asked, stating that the standard is whether "there is a *reasonable likelihood* that [the question] would reveal a basis for disqualification." *Id.* at 612, 903 A.2d 922. The charges in *Thomas* and *Sweet* met this standard because they involved crimes that "in and of themselves" tend to "evoke strong feelings that could unduly bias" a prospective juror and impact the juror's ability to act as a fair and impartial juror. *Id.* at 610, 903 A.2d 922.[7]

 Where the crime charged, however, is not one likely to evoke strong passion or prejudice, and there is not a reasonable likelihood that the question would reveal a basis for disqualification, we hold that the court is not *required* to ask whether the venire has strong feelings about the crime.

---

7. On October 12, 2010, the Court of Appeals is scheduled to hear argument on another case involving the scope of voir dire. In *State v. Schim*, No. 18, Sept. Term 2010, the Court will address whether, in a murder trial, the court erred in refusing to ask the prospective jurors if they had "such strong feelings concerning the violent death of another human being" that they would be unable to render a fair and impartial verdict.

Rather, it is within the trial court's discretion to determine whether to ask the question.[8]

■ Here, there is nothing to suggest that motor vehicle theft evokes strong emotions comparable to that of drug crimes, handgun use, or sexual abuse of children. Appellant cites to a crime report by the Department of Justice, which states that there were 5,508 motor vehicle thefts reported in Baltimore City in 2008. U.S. Dep't of Justice, *Crime in the United States—Preliminary Annual Uniform Crime Report—January to December 2008*, (2009), available at http://www.fbi.gov/ucr/08aprelim/table_4il-mo.html. Appellant argues that this results in approximately 868 motor vehicle thefts per every 100,000 people, and "[s]uch numbers suggest that residents of Baltimore City may indeed harbor strong opinions about motor vehicle theft." These figures, which assess the frequency of the crime, do not address whether the crime evokes strong feelings that would impact a juror's ability to be fair and impartial.[9]

We hold that motor vehicle theft generally is not the type of crime that has the tendency to evoke such strong passion or prejudice that a court is required to ask the potential jurors if they have strong feelings about the crime that would render them unable to render a fair and impartial verdict. Although it certainly is within the court's discretion to ask such a

---

8. There is no litmus test for determining what crimes tend to evoke such strong feelings that there is a reasonable likelihood that those feelings would reveal a basis for disqualification. *See, e.g., Curtin*, 393 Md. at 614, 903 A.2d 922 (listing other crimes that may engender strong feelings) (Wilner, J., concurring). For that reason, and to avoid possible reversal of convictions on appeal, it may be prudent for a court, if requested, to include a voir dire question regarding whether potential jurors have strong feelings about the crime charged. *See Moore*, 412 Md. at 668–69, 989 A.2d 1150 (Murphy, J., concurring) (suggesting that the trial court "resolve a 'doubtful' and/or 'marginal' voir dire question in favor of the party who has requested that it be asked.").

9. To the extent that a potential juror had been the victim of an automobile theft, the court specifically questioned that person regarding whether that impacted his or her ability to be fair and impartial.

question, it is not within the class of questions that are mandatory. There was no abuse of discretion by the trial court in this case in declining to ask the requested question.

## II.

### Motion in Limine

Appellant next argues that the trial court erred in limiting his opening statement and cross-examination. Specifically, he contends that the court erred in granting the State's motion *in limine*, which sought to preclude the defense from mentioning or asking about his statement to the police. The substance of appellant's post-*Miranda*[10] statement to the police, as recounted by the prosecutor at the motions hearing, was as follows:

> The statement is, "the Defendant stated he did not know who owned it. He claimed that he just got the truck about an hour ago from some "dude" from around Pennsylvania Avenue and Freedmont [sic]. He stated that "the dude" told him to drive up to the Home Depot to get some stuff for a house on Fulton Avenue and that he would pay him $40 to do so. Defendant Sanders stated that he did not know the name of the dude. Only described him as a black male in his 30's. Defendant Sanders made no further statements."

Appellant acknowledges that he could not introduce his own self-serving statement for the truth of the matter asserted. He argues, however, that the statement was admissible as nonhearsay to show that he "made a statement and that the officers took no action after receiving this statement."

The State argues that appellant's contention that the trial court erred in precluding him from referring to the substance of his statement is not preserved for appellate review because, at trial, appellant "did not seek to introduce the *substance* of his statement, but rather only the fact that the statement was made." With regard to appellant's argument that the trial

---

10. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court erred in preventing him from making "any reference to the fact that a statement was made," the State asserts that the trial court properly acted within its discretion "[b]ecause the probative value of this information was substantially out-weighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury."

## A. Proceedings Below

Prior to trial, the State moved *in limine* "to preclude counsel in his opening or during the cross-examination of any of the State's witnesses from mentioning or even asking about the Defendant's post *Miranda* statement which will not be part of the State's case in chief." The colloquy that subsequently occurred was as follows:

[PROSECUTOR]: ... The State will not ask about the statement, will not mention the statement in the opening. Although the State could, the Defense cannot b[y] the rules of evidence, as it is hearsay, self-serving. The only way the Defendant can testify as to what he said is if he takes the stand.

The reason for me asking to have this court preclude counsel from even mentioning anything about Miranda or about a statement ... is because those questions and their answers would be irrelevant to the State's case, non-proba-tive, terribly misleading and confusing to the jury.

\* \* \*

THE COURT: I thought I heard earlier that the Defense conceded that they couldn't use it. Did I hear that or was I mistaken?

[DEFENSE COUNSEL]: Your Honor ... what I said to the court is the actual statement, the out of court statement involved in this case would be hearsay. However, what I believe counsel is trying to prohibit the Defense from doing is even asking the police officers if they Mirandized him or if he made a statement, which I believe is different and we would most certainly oppose the State's argument on that.

\* \* \*

[PROSECUTOR]: Counsel has correctly framed the issue and I am seeking to preclude counsel from doing just as he spoke. And the reason is, it's truly a bridge to nowhere in this case to use a congretional [sic] analogy.

\* \* \*

As I stated, that will not be part of the State's case. If counsel is allowed to ask questions about, was he Mirandized, knowing full well as he's conceded, the statement won't come in to evidence, it's going to mislead the jury. It's going to confuse them. They're going to start to wonder, why didn't the State ask that question? When in reality, that evidence can come out and it can come out in the proper way; that is, through the Defendant's own testimony presently in court today.

That is why I am seeking to preclude even the question. It's irrelevant, it's non-probative and it would mislead the jury, knowing full well that that statement won't come into evidence through the State's case in chief.

\* \* \*

[DEFENSE COUNSEL]: Your Honor, I understand counsel's position here, however, that's a tactical issue for the State, that it's his choice not to introduce the statements. That's his choice. He could admit those as party admission. That's his decision to make. The facts of the case are the facts of the case. The fact that he was pulled over, the fact that he was stopped, the fact that he was Mirandized, the fact that he gave responses to the police officers are all proper questions. The fact that the police officers didn't follow up on . . . the statements that he made is fair game for cross examination.

Defense counsel then argued why the existence of the statement, as opposed to the substance of the statement, should be admitted:

[DEFENSE COUNSEL]: The fact that the police officers did not follow up, to my knowledge, on the information that was given to them, is completely admissible. That goes to their investigation into their completeness in doing their job.

I understand the State doesn't want to do this because then they're going to feel compelled to bring the statement in that is, in their estimation self-serving. However, that's their tactical decision. There's no basis in the rules of evidence that would preclude me from asking the police officers about acts, and that's what we're talking about here; actual acts, not the substance of statement, only that a statement was made at that time.

\* \* \*

[THE COURT]: So what you're saying is this court should allow you to force the State to introduce the statement? [DEFENSE COUNSEL]: No, Your Honor. What I'm saying to the court is [ ] that, the court should not prevent me from asking questions about what happened. If the court wants to prevent me from asking specific questions as to the substantive statements, that's within the rules of evidence. But preventing [me] from asking what happened on a particular date and time in relation to a criminal investigation where the Defendant is on trial for those acts is—I don't believe there's a basis in the rules of evidence for that.

The prosecutor stated that the motion *in limine* was based on Rule 5–403, which permits exclusion of evidence if the probative value of the evidence is substantially outweighed by the potential for prejudice.[11] The State asserted that permitting argument or inquiry regarding appellant's statement would be unduly prejudicial.

Defense counsel reiterated that he sought to admit only "what happened," *i.e.* that appellant made the statement to the police. Counsel conceded that the substance of the statement was not admissible by the defense.

The court granted the State's motion, ruling as follows:

---

**11.** Md. Rule 5–403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

THE COURT: All right. Well, the court has considered all of your arguments and the—it is undisputed that the statement is inadmissible at least from the Defense perspective. The State has the option of admitting it. The State has elected not to and to allow the Defense to ask the same—to ask the questions about the statement is to allow the self-serving statement to come in either actually or by inference. And that is, in this court's view, violative of the intent of the rules.

There's nothing to preclude the Defense from asking questions about whether the officer did any additional investigations as to this case, but to get into the statement, to imply that there was a statement when it's self-serving and inadmissible from the Defense perspective, would be inappropriate as far as this court is concerned. So I'm not going to let you elude [sic] to it. If you put your client on the witness stand that's one thing. Certainly if you choose to call witnesses that's another.

\* \* \*

My ruling is that you cannot elude [sic] to statement given by your client to the police in your opening statement. I won't speak about closing argument at this point because I don't know what's going to happen during the course of the trial. But in your opening statement or in questioning the officers about the statement, I'm not going to allow you to do that.

\* \* \*

[DEFENSE COUNSEL]: I can't—what you're saying to me is I can't elude [sic] to their investigation after the stop?
THE COURT: No, I didn't say that.

\* \* \*

I said you cannot ask about the statement.
[DEFENSE COUNSEL]: I understand.
THE COURT: And that's the narrow scope of my ruling.

\* \* \*

[DEFENSE COUNSEL]: As far as asking if they have information or if they investigated—if anyone else could have stolen that car. That doesn't include—

THE COURT: You can ask that question, sir.

## B. Preservation

██ The State argues that appellant's contention that the court erred in precluding comment or questioning regarding the substance of his statement to the police is not preserved for this Court's review. It asserts that, not only did appellant fail to argue to the trial court that the substance of the statement was admissible as nonhearsay, but defense counsel "expressly conceded that he was prohibited from referring to the substance of the statement." We agree that this contention is not preserved.

██ An appellate court ordinarily will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court." Md. Rule 8–131(a). The rationale for "the rule limiting the scope of appellate review to those issues and arguments raised in the court below 'is a matter of basic fairness to the trial court and to opposing counsel, as well as being fundamental to the proper administration of justice.'" *In re: Kaleb K.*, 390 Md. 502, 513, 889 A.2d 1019 (2006) (quoting *Medley v. State*, 52 Md.App. 225, 231, 448 A.2d 363 (1982)). *Accord Robinson v. State*, 410 Md. 91, 103, 976 A.2d 1072 (2009) ("Fairness and the orderly administration of justice is advanced 'by "requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings."'") (citations omitted). *See also Chertkof v. Dep't of Nat. Res.*, 43 Md.App. 10, 16, 402 A.2d 1315 (1979) (Permitting appellant "to raise an entirely new theory which was never espoused ... would make a mockery of the appellate process. A petitioner is bound to the theory he elects to pursue at trial.").

██ Here, appellant's argument on appeal, that the substance of appellant's statement to the police was admissible by

the defense for nonhearsay purposes, *i.e.* that the police officers failed to follow-up on the information in the statement, was never argued below. Indeed, defense counsel expressly stated that he was "not seeking to introduce the statement," but rather, he sought only to establish "that a statement was given and no substantive investigation followed." Defense counsel conceded that it was "within the rules of evidence" for the court to preclude him from eliciting testimony regarding the substance of the statement.

Under these circumstances, appellant's argument that the substance of the statement was admissible is not preserved for appellate review. *See Miles v. State*, 365 Md. 488, 554, 781 A.2d 787 (2001) (defendant not " 'allowed to assert one position at trial and another, inconsistent position on appeal' ") (quoting *Burch v. State*, 346 Md. 253, 289, 696 A.2d 443 (1997)), *cert. denied*, 534 U.S. 1163, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002); *Chimes v. Michael*, 131 Md.App. 271, 288, 748 A.2d 1065 (Rule 8–131(a) "curbs appeals that are inconsistent with the parties' positions at trial."), *cert. denied*, 359 Md. 334, 753 A.2d 1031 (2000). We decline to address this argument.

## C. Evidence that a Statement was Made

Appellant next contends that, even if the statement itself was not admissible, "the fact that a statement was made and that the officers took no action was independently admissible." He argues that "[t]elling the jury that Appellant made a statement and that the police took no further actions would not cause the jury to decide the case on an emotional basis and thus this evidence would not, like the statement itself, be unduly prejudicial to the State."

The State contends that the trial court properly exercised its discretion in precluding any reference to the existence of the statement. It argues that "the probative value of this information was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury."

■■■■■ A decision regarding the admissibility of evidence is a matter left to the sound discretion of the trial court, and the court's ruling in this regard will not be reversed absent a clear abuse of discretion. *Thomas v. State*, 397 Md. 557, 579, 919 A.2d 49 (2007). As indicated, the abuse of discretion standard permits reversal only if the decision is " 'well removed from any center mark imagined by the reviewing court.' " *King*, 407 Md. at 697, 967 A.2d 790 (quoting *North*, 102 Md.App. at 14, 648 A.2d 1025).

■■■■ A trial court may exclude evidence, even if it is relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Md. Rule 5–403. *Accord Odum v. State*, 412 Md. 593, 609, 989 A.2d 232 (2010). As the Court of Appeals has explained, Rule 5–403 "codifies the inherent powers of trial judges to exercise discretion to exclude relevant, probative evidence that is unduly prejudicial, confusing, or time-consuming." *Crane v. Dunn*, 382 Md. 83, 100, 854 A.2d 1180 (2004).

Here, the trial court properly weighed the potential prejudice versus the probative value of allowing the defense to refer to appellant's statement. The court initially noted the agreement by the parties that appellant's self-serving statement to the police was not admissible by the defense if the State did not offer the statement in its case. *See Braxton v. State*, 57 Md.App. 539, 546, 470 A.2d 1327 ("general rule that self-serving declarations—that is, statements favorable to the interest of the declarant—are not admissible in evidence as proof of the facts asserted in the declaration."), *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984). The court found that, under these circumstances, allowing the defense to refer to an inadmissible statement "would be inappropriate."

We agree with the trial court's analysis. Reference to a statement that appellant made to the police, when that statement was not admissible and not introduced into evidence,

likely would have confused the jury and caused it to speculate why the statement was not introduced into evidence.

Moreover, the court's ruling did not preclude defense counsel from pursuing a theory that the police failed to conduct a thorough investigation. The court made clear that defense counsel was not prohibited from questioning the police about the nature and extent of their investigation. The court specifically advised that defense counsel could question the police regarding whether "they investigated ... if anyone else could have stolen that car." And in closing argument, defense counsel stated that "two officers who have testified ... failed to do any investigation."

The court properly weighed the probative value of the evidence versus the prejudice. It did not abuse its discretion in precluding reference to, or questioning regarding, appellant's self-serving statement.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

Dissenting Opinion by ALPERT, J.

PAUL E. ALPERT, J. (Retired, Specially Assigned), dissenting.

Respectfully, I disagree with my learned colleagues wherein they would approve the able and experienced trial judge's refusal to inquire whether any member of the jury panel had strong feelings concerning motor vehicle theft "that would render the juror unable to render a fair and impartial verdict."

I would think that most people would become very upset to find that their motor vehicle was stolen. Automobile theft is rampant in the United States in general, and Baltimore City in particular.

Appellant's footnote 4 presents supportive and illustrative specifics:

"According to the Federal Bureau of Investigation's *Preliminary Annual Uniform Crime Report* for 2008, in Baltimore City there were 5,508 motor vehicle thefts reported in

2008. The Federal Bureau of Investigation estimated that Baltimore City's population is 634,549.

FEDERAL BUREAU OF INVESTIGATION, PRELIMINARY ANNUAL UNIFORM CRIME REPORT (2009), http://www.fbi.gov/ucr/08 aprelim/table_4il-mo.html (Last visited June 23, 2009).

This represents approximately 868 motor vehicle' theft reports per every 100,000 people. Such numbers suggest that residents of Baltimore City may indeed harbor strong opinions about motor vehicle theft.

By way of comparison, there were 9058 motor vehicle theft reports in 2008 in Philadelphia, a city of 1,441,117.

FEDERAL BUREAU OF INVESTIGATION, PRELIMINARY ANNUAL UNIFORM CRIME REPORT (2009), http://www.fbi.gov/ucr/08 aprelim/table_4ok-wi.html (Last visited June 23, 2009).

This represents approximately 639 motor vehicle theft reports per every 100,000 people."

The following article published October 2007 by *Newshound* sets out the sheer magnitude of the stolen car epidemic:

Crime is an issue throughout the United States. The headlines might be grabbed by acts of violence such as murder, rape, shootings, and kidnapping but they aren't as common as another crime. The frequency of vehicle theft may amaze many of you. Despite the fact that car thefts dropped for the third consecutive year, a car is stolen in the United States every 26.4 seconds. This fact was revealed in a recent press release by the National Insurance Crime Bureau.

There were 1,192,809 motor vehicles stolen last year. This was 42,417 vehicles fewer than the amount stolen in 2005 though, and marked the third annual decrease in a row. The FBI estimates the average value of a stolen vehicle at $6,649, which when multiplied by the number of stolen vehicles comes to a grand total of $7.9 billion dollars of lost vehicles in 2006. Despite the high value of the loss, the trend is good news for car owners.

"The decrease in vehicle thefts is certainly welcome news to law enforcement, the insurance industry and vehicle

owners nationwide," said Robert M. Bryant, who is the National Insurance Crime Bureau's President and CEO. "At NICB, we have been providing the latest technology in auto theft detection and recovery equipment to law enforcement agencies from California to Florida," continued Bryant.

Out of the ten most stolen vehicles, only one of them is from the twenty first century. That car is the 2005 Dodge Ram Pickup truck, and is the fifth most stolen automotive vehicle. The most popular vehicle that thieves seek is the 1995 Honda Civic, with the second most popular being the 1991 Honda. Another import comes in at the number three spot in the form of the 1989 Toyota Camry. All those top three most stolen vehicles are imports. The first American car is the 1997 Ford F–150 Series Pickup which ranks just above the 2005 Dodge Ram Pickup on the list.

Not all the news is good news for vehicle owners about trends. Despite the third straight year in reductions in the number of vehicles stolen, they were recovered less often last year. Only 59% of stolen vehicles were recovered last year, which is the lowest in over a decade according to the press release.

The Appellant contends that "The General Questions Asked of the Venire Panel were Not Reasonably Calculated to Uncover Bias Specific to that Crime for Which Appellant was Charged." I agree with that argument and would grant Appellant a new trial.