# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dow Chemical Company,       :
               Petitioner     :
                             :
            v.           :    No. 892 F.R. 2018
                             :    ARGUED: October 9, 2025
Commonwealth of Pennsylvania,   :
               Respondent   :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: December 22, 2025**

Dow Chemical Company petitions for review of the order of the Board of Finance and Revenue (Board) sustaining a decision of the Board of Appeals (BOA) that denied Dow's petition for reassessment of its corporate net income tax (CNIT) liability.[1] At issue once again is a uniformity challenge[2] to the net loss carryover (NLC) deduction for CNIT contained in the Tax Reform Code of 1971,[3] this time for the 2013 tax year. The parties dispute the applicability of our Supreme Court's recent decision in *Alcatel-Lucent USA Inc. v. Commonwealth*, 326 A.3d 816 (Pa. 2024) (*Alcatel III*), specifically the holding that *Nextel Communications of the*

---

[1] It may seem counter-intuitive that administrative appeals are taken *from* the Board of Appeals (BOA) *to* the Board of Finance and Revenue (Board), but that is the scheme applicable in cases such as these. Thereafter, appeals are taken from adjudications of the Board to this Court.

[2] Article 8, section 1 of the Pennsylvania Constitution (the Uniformity Clause) provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1.

[3] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

*Mid-Atlantic, Inc. v. Commonwealth*, 171 A.3d 682 (Pa. 2017) (*Nextel II*), *cert. denied*, 584 U.S. 1033 (2018), "should apply only prospectively." *Alcatel III*, 326 A.3d at 819. In short, Dow argues that *Alcatel III* does not control because Dow is not requesting a refund of taxes already "paid, budgeted and spent" by the Commonwealth, as was Alcatel, but merely contesting a reassessment of tax that has not yet been paid. *Id.* at 826. We affirm.

## I. Procedural Background

The pertinent facts are not in dispute, having been established by joint stipulation of the parties.[4] "Dow is a Delaware corporation that develops, manufactures, and sells specialty chemicals, advanced materials, and plastics." Stipulation of Facts (SOF) ¶ 3. Because it is a corporation that does business, carries out activities, or owns property in Pennsylvania, Dow is subject to Pennsylvania's CNIT. *See* Section 402(a) of the Tax Code, 72 P.S. § 7402(a); *see also Alcatel III*, 326 A.3d at 819. The CNIT rate for the 2013 tax year was 9.99% of Dow's federal taxable income apportioned to Pennsylvania. *See* Section 402(b) of the Tax Code, 72 P.S. § 7402(b); *see also Alcatel III*, 326 A.3d at 819. For CNIT,

> [t]he []NLC[] deduction comes into play when a corporation has negative income, meaning that the corporation's calendar-year losses exceed its calendar-year income. When this happens, the corporation is said to have a "net operating loss." A corporation with a net operating loss can reduce its taxable income to zero and then carry over any remaining, un-deducted losses into a future tax year or years. But there is a statutory "cap" on

---

[4] The Board does not certify a record to this Court. Pa.R.A.P. 1571(f). Rather, as factfinder, we review "decisions of the Board *de novo* based on stipulated facts or a record created before this Court," or a combination thereof. *Synthes USA HQ, Inc. v. Commonwealth*, 236 A.3d 1190, 1193 n.4 (Pa. Cmwlth. 2020), *aff'd*, 289 A.3d 846 (Pa. 2023) [citing Pa.R.A.P. 1571(h); *Plum Borough Sch. Dist. v. Commonwealth*, 860 A.2d 1155 (Pa. Cmwlth. 2004)]. Here, the parties filed a stipulation of facts (SOF) on July 3, 2025.

these carryover deductions, which limits the amount of carried-over losses that can be deducted in any given calendar year.

*Alcatel III*, 326 A.3d at 819. The NLC deduction for 2013 was capped at "the greater of 20% of taxable income apportioned to Pennsylvania or $3 [million]." SOF ¶ 9 [citing Section 401(3)4.(c)(1)(A)(IV) of the Tax Code, 72 P.S. § 7401(3)4.(c)(1)(A)(IV)].[5]

On its tax report for CNIT for the 2013 tax year (tax report), Dow's taxable income apportioned to Pennsylvania, before accounting for the NLC deduction, was $18,345,672. SOF ¶ 8. Dow also reported on that tax report net losses—accumulated since 1998 and carried over into the 2013 tax year—of $575,641,128. SOF ¶ 7 [citing Section 401(3)4.(b) of the Tax Code, 72 P.S. § 7401(3)4.(b)]. Dow admittedly did not follow the statutory cap; instead, "Dow took a net loss deduction of $18,345,672, which was more than 20% of [its] taxable income apportioned to Pennsylvania and more than $3 [million]." SOF ¶ 10. Dow reported $0 in taxable income apportioned to Pennsylvania, after the deduction, and did not pay tax. SOF ¶ 11; *see also* Dow's Br. at 6. In other words, "Dow took an uncapped NLC deduction." Commonwealth's Br. at 7. According to Dow, it "deducted its prior[ ]year 'net losses' in full . . . in anticipation of a favorable decision in . . . *Nextel*," which "was ongoing when Dow filed its 2013 return in 2014." Dow's Br. at 6.

After reviewing Dow's tax report, the Department of Revenue issued a notice of assessment increasing Dow's CNIT tax liability to "$1,466,186, which was the result of the Department reducing Dow's [NLC] deduction to $3,669,134. That reduced deduction was 20% of Dow's $18,345,672 of taxable income before

_____

[5] The dollar limitation for the NLC deduction, such as the $3 million limit here, is sometimes referred to as a "flat cap" or a "flat deduction."

accounting for the [NLC] deduction." SOF ¶ 13. Dow filed a petition for reassessment,[6] which BOA denied, and Dow subsequently appealed to the Board. SOF ¶¶ 14-16; *see* SOF, Ex. D (BOA decision).

Importantly, in June 2016, *at Dow's request*, the Board continued Dow's appeal pending the final outcome of the *Nextel* litigation. SOF ¶ 17; SOF, Ex. G (Bd.'s Decision) at 3.[7] After *Nextel II* was decided, the Board issued its decision and order denying Dow's appeal, explaining that the Department's assessment was properly calculated based on an NLC deduction of 20% of Dow's apportioned taxable income. *See* SOF, Ex. G at 4. The Board further noted that it could not render a decision as to Dow's constitutional claims. *Id.*[8] Dow then petitioned this Court for review.[9]

## II. Prior NLC Deduction Decisions

### A. *Nextel*

We now turn to our courts' prior NLC deduction decisions, the first of which is *Nextel*. The statute at issue in *Nextel* limited a corporation's NLC deduction for the 2007 tax year to the greater of $3 million or 12.5% of the corporation's taxable income. *Nextel Commc'ns of the Mid-Atlantic, Inc. v. Commonwealth*, 129

---

[6] Despite the fact that Dow did not pay any CNIT for tax year 2013, it also filed a refund petition, which BOA denied. The Board denied Dow's further appeal, and Dow then petitioned this Court for review. *See Dow Chem. Co. v. Commonwealth* (Pa. Cmwlth., No. 891 F.R. 2018). Dow ultimately discontinued that matter, but not until June 2025.

[7] The Pennsylvania Supreme Court issued its decision in *Nextel II* on October 18, 2017, and the United States Supreme Court denied certiorari in June 2018. *See Nextel Commc'ns of the Mid-Atlantic, Inc. v. Pa. Dep't of Revenue*, 584 U.S. 1033 (2018).

[8] The Board also dismissed multiple issues raised by Dow as being outside the basis of the assessment. SOF, Ex. G at 4. Those issues are not presently before this Court.

[9] Dow also submitted a check to this Court in the amount of $1,636,730.40 as security, which is required for an automatic supersedeas. SOF ¶ 26.

4

A.3d 1, 3 (Pa. Cmwlth. 2015) (*en banc*) (*Nextel I*). Using the 12.5% limit, Nextel took a $5.6 million NLC deduction which reduced its taxable income for the 2007 tax year to $39.4 million. *Id.* at 4. Based on that amount, Nextel then paid approximately $4 million in CNIT and filed a petition for refund, which both BOA and the Board denied, noting "that they lacked the authority to consider and rule on Nextel's constitutional challenge." *Id.*

Before this Court, Nextel claimed that the cap on the NLC deduction violated the Uniformity Clause because it "created separate classes of taxpayers based solely upon income level[.]" *Alcatel III*, 326 A.3d at 819. *See also Nextel I*, 129 A.3d at 4. More specifically, Nextel claimed that the NLC deduction "allowed taxpayers with incomes below $3 million to fully offset their CNI[T] liability, while larger companies (with taxable income greater than $3 million) could not do the same." *Alcatel III*, 326 A.3d at 819. *See also Nextel I*, 129 A.3d at 4-5.

This Court agreed with Nextel that "the limitations in the NLC deduction provision, particularly the operation and effect of the $3 million [flat] cap, violate the Uniformity Clause." *Nextel I*, 129 A.3d at 11. As to the question of remedy, this Court held that striking only the $3 million flat cap "would not remedy the wrong suffered by Nextel in the 2007 [t]ax [y]ear" or "remedy the constitutional violation." *Id.* at 13. Therefore, the Court struck the NLC deduction provision in its entirety as to Nextel,[10] reversed the order of the Board, and directed the

---

[10] As the Court explained,

> [i]n response to the Commonwealth's concerns, we fully recognize that our decision in this case could be far-reaching. Nonetheless, our analysis and remedy *is appropriately confined to the Commonwealth, Nextel, and the 2007* [*t*]*ax* [*y*]*ear*. To the extent our decision in this *as-applied challenge* calls into question the validity

**(Footnote continued on next page…)**

5

Department to refund Nextel approximately $4 million, the entire amount of CNIT it paid for the 2007 tax year. *Id.*

The Commonwealth appealed and the Supreme Court affirmed in part, and reversed in part. Specifically, it affirmed this Court's holding that the NLC deduction provision, as applied to Nextel, violated the Uniformity Clause. *Nextel II*, 171 A.3d at 685, 698-99. However, it found that the unconstitutional $3 million flat cap could be severed from the statute and "still enabl[e] the statute to operate as the legislature intended." *Id.* at 685; *see also id.* at 704. As for the appropriate remedy, the Supreme Court explained that "even with the offending [flat cap] provision of the NLC stricken, [Nextel] [wa]s subject to the same tax liability for tax year 2007 as previously assessed by the Department," given that it calculated and paid CNIT based on the nonoffending 12.5% limit. *Id.* at 705. Therefore, the Supreme Court reversed this Court's order eliminating any caps on net loss deductions for Nextel for tax year 2007, and reversed the direction for the Department to refund Nextel approximately $4 million. *Id.* at 685, 705. Notably, Nextel only raised an as-applied rather than a facial challenge, and the parties did not brief or argue the issue of retroactivity.

## B. *General Motors*

The next major case to address the NLC deduction is *General Motors Corporation v. Commonwealth*, 222 A.3d 454 (Pa. Cmwlth. 2019) (*GM I*), *aff'd in*

---

of the NLC deduction provision in any other or even every other context, the General Assembly should be guided accordingly.

*Nextel I*, 129 A.3d at 13 (emphasis added). The General Assembly ultimately heeded this warning as, in response to *Nextel II*, it eliminated the NLC deduction provision's flat cap for taxable years beginning after December 31, 2017. *See* Section 401(3)4.(c)(VI)-(VIII) of the Tax Code, 72 P.S. § 7401(3)4.(c)(VI)-(VIII).

*part & rev'd in part*, 265 A.3d 353 (Pa. 2021) (*GM II*). GM challenged the Tax Code's NLC deduction provision for the 2001 tax year, which *only* allowed a $2 million flat cap deduction, not a percentage cap. *GM I*, 222 A.3d at 458. GM's taxable income apportioned to Pennsylvania before the NLC deduction was approximately $9 million, and its accumulated carryover losses were in excess of $202 million. *Id.* GM could have reduced its taxable income to zero if it had been able to carry over additional accumulated losses, i.e., with an uncapped NLC deduction. *Id.* However, utilizing the statutory $2 million flat cap deduction resulted in a CNIT liability of $738,760. *Id.* GM paid this amount in full and then filed a petition for refund, which both BOA and then the Board denied. *Id.* at 458-59.

Before this Court, the parties agreed that the flat cap NLC deduction violated the Uniformity Clause pursuant to *Nextel II*, but disagreed regarding the appropriate remedy. *GM I*, 222 A.3d at 458.

> [C]onsidering that some taxpayers ha[d] actually paid tax for 2001, while others ha[d] not, GM contend[ed that] the Due Process and Equal Protection Clauses of the United States Constitution and the Remedies Clause of the Pennsylvania Constitution require[d] an actual (as opposed to hypothetical) equalization of the relative tax positions of the taxpayers for 2001. *See* U.S. Const. amend. XIV, § 1; Pa. Const. art. VIII, § 1.

*Id.* at 459. The Court was also tasked with determining whether the remedy "should apply retroactively or prospectively." *Id.*

Because there was no percentage cap for the 2001 tax year, only the flat cap found to be unconstitutional in *Nextel II*, the Court explained that there were "only two severability options available: (1) sever the flat $2[ million] deduction from the remainder of the NLC [provision] and allow corporations to claim an

7

unlimited net loss; or (2) strike down the entire NLC [provision] and, thus, disallow any" NLC deduction. *GM I*, 222 A.3d at 462. Ultimately, the Court held that the intent of the General Assembly was better served by the first option, severing the offending flat cap, as opposed to striking the entire NLC provision. *Id.* at 465. "This remedy satisfies due process by providing 'meaningful backward-looking relief,' where striking the entire NLC [provision] does not." *Id.* at 473 [quoting *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 42 (1990)]. Moreover, the Court found that retroactive application was not precluded under *Chevron Oil Company v. Huson*, 404 U.S. 97 (1971). *GM I*, 222 A.3d at 473. Therefore, the Court reversed the Board's order and remanded for the Board to recalculate GM's CNIT, without capping its deduction and to issue a refund. *Id.*

On appeal, our Supreme Court crucially held that the first *Chevron* factor controlled "because *Nextel* [*II*] did not establish a new principle of law but instead 'steadfastly adhered' to a century of case law interpreting the Uniformity Clause to invalidate tax 'classifications based solely upon the quantity or value of the property being taxed.' *Nextel* [*II*], 171 A.3d at 696." *GM II*, 265 A.3d at 368, *overruled by Alcatel III*. The Court further concluded "that severance of the NLC provision in its entirety [wa]s more consistent with the General Assembly's intent, as evidenced by the history of [the] NLC deduction provision." *GM II*, 265 A.3d at 375. Given these holdings, our Supreme Court ruled as follows,

> we affirm the Commonwealth Court to the extent it deemed *Nextel* [*II*] to apply retroactively to control the case at bar. We reverse the Commonwealth Court to the extent it remedied the violation of the Uniformity Clause by severing the $2 million [flat] cap; we instead conclude that the proper remedy is to sever the NLC deduction provision in its entirety for the 2001 [t]ax [y]ear. Finally, we affirm the Commonwealth Court's order to the extent

8

> it remands to the . . . Board to recalculate GM's [CNIT] without capping its NLC deduction and to issue a refund based upon that recalculation, which we conclude is required to remedy the due process violation of GM's rights pursuant to *McKesson*[.]

*GM II*, 265 A.3d at 380.

## C. *Alcatel*

This brings us to *Alcatel*, which involved a uniformity challenge to the Tax Code's NLC deduction provision for the 2014 tax year. *Alcatel-Lucent USA Inc. v. Commonwealth* (Pa. Cmwlth., No. 803 F.R. 2017, filed Sept. 13, 2021) (*Alcatel I*), slip op. at 1-2. Alcatel's income apportioned to Pennsylvania for 2014, before any NLC deduction, was $27,332,333, and it had accumulated net losses of over $791 million. *Id.*, slip op. at 2. At the time Alcatel filed its CNIT tax report, the Tax Code allowed an NLC deduction for the greater of $4 million or 25% of a corporation's income apportioned to Pennsylvania. *Id.* Alcatel took an NLC deduction of $6,833,083 (based on the 25% cap, the greater amount), resulting in a CNIT liability of approximately $2 million. *Id.*, slip op. at 3. Alcatel paid this amount in full and filed a petition for refund prior to the Supreme Court's decision in *Nextel II*, requesting an unlimited NLC deduction. *Id.* Both BOA and the Board denied Alcatel's refund petition, and Alcatel then petitioned this Court for review, specifically raising the issue of retroactivity. *Id.*

In *Alcatel I*—which was issued after our decision in *GM I* but prior to our Supreme Court's decision in *GM II*—this Court determined that *Chevron* did not support a retroactive application of *Nextel II* in this particular case, and therefore applied *Nextel II* prospectively. *Alcatel I*, slip op. at 12. As the Court explained: "Because [Alcatel] calculated its tax liability for the 2014 [t]ax [y]ear using the 2014 NLC deduction provision, which was not unconstitutional and was valid, in *toto*,

9

until 2017, [Alcatel] paid the correct amount of tax and is, therefore, not entitled to a refund." *Id.*, slip op. at 12-13. The Court also rejected Alcatel's arguments that prospective application of *Nextel II* violated the Due Process, Equal Protection, or Remedies Clauses. *Id.*, slip op. at 13-18. For these reasons, the Court found that Alcatel was not entitled to a refund and affirmed the Board's order. *Id.*, slip op. at 18.

Before this Court could consider Alcatel's exceptions,[11] our Supreme Court issued its decision in *GM II*. Thereafter, based on the holdings in *GM II* "that *Nextel* [*II*] applies retroactively and that due process requires equalizing the tax positions between favored and nonfavored taxpayers," our *en banc* Court sustained Alcatel's exceptions, reversed the Board's order, and remanded to the Board for the issuance of a refund. *Alcatel-Lucent USA Inc. v. Commonwealth*, 291 A.3d 438, 447 (Pa. Cmwlth. 2023) (*Alcatel II*), *rev'd*, *Alcatel III*.

Finally, we have *Alcatel III*, wherein our Supreme Court reversed itself, holding "that [*GM II*] was erroneous, and that *Nextel* [*II*] should apply only prospectively." *Alcatel III*, 326 A.3d at 819. *See also id.* at 828. The *Alcatel III* Court explained that *GM II* "was incorrectly decided" because it "failed to analyze all three *Chevron* factors[,]" and erroneously concluded that *Nextel II* did not announce a new principle of law. *Alcatel III*, 326 A.3d at 823-24.[12] The Court also disagreed with *GM II*'s

---

[11] *See* Pa.R.A.P. 1571(i) (providing that a party may file exceptions to the Court's initial determination within 30 days and that "timely exceptions shall have the effect[] . . . of an order expressly granting reconsideration").

[12] In conducting a retroactivity analysis, courts must "analyze all three *Chevron* factors," namely, "(1) whether the decision in question established a new principle of law; (2) whether retroactive application of the decision would forward the operation of the decision; and (3) whether the relevant equities favor prospective application." *Alcatel III*, 326 A.3d at 823-24.

separate holding that the Fourteenth Amendment's Due Process Clause requires that we equalize the positions of the taxpayers that benefited from the cap on NLC deductions with those that were disadvantaged by it.[] . . . Where, as here, we find that prospective-only application of a decision invalidating a tax statute is appropriate, any taxes collected prior to the date of our decision were not unconstitutional.

*Alcatel III*, 326 A.3d at 827 (footnote omitted).

### III. Issue

The sole question presented, as stated by Dow, "is whether the Department may collect additional tax, when collecting the tax will make the tax non-uniform for the tax year, if the taxpayer has challenged the constitutionality of the tax before paying it." Dow's Br. at 5 (emphasis in original). This statement is confusing, and somewhat misleading because it refers to collecting "additional tax" when Dow has not yet paid *any* CNIT for the tax year at issue. The Commonwealth's counter statement of the question presented is "[d]oes the . . . holding in *Nextel* [*II*] apply only prospectively such that Dow[]'s request for a retroactive remedy for tax year 2013 must be rejected[.]" Commonwealth's Br. at 4. At its core, the legal issue here is whether *Alcatel III* controls in cases like Dow's where the taxpayer is not requesting a tax refund, but challenging an assessment where no CNIT has been paid.

### IV. Discussion

As a result of this decade of NLC deduction litigation, we now have several key legal principles that are no longer in contention, the first of which is that the flat cap NLC deduction violates the Uniformity Clause. *Nextel II*; *Alcatel III*. Second, for purposes of retroactivity and the *Chevron* test, *Nextel II* established a new principle of law. *Alcatel III*, 326 A.3d at 823-24. And third, all three *Chevron*

11

factors are relevant to and must be considered in our courts' retroactivity inquiries. *Id.* at 824. Along with these principles, we must keep in mind the long-established "general rule that 'a decision . . . invalidating a tax statute takes effect as of the date of the decision and is not to be applied retroactively.'" *Alcatel III*, 326 A.3d at 826 [quoting *Oz Gas, Ltd. v. Warren Area Sch. Dist.*, 938 A.2d 274, 285 (Pa. 2007)].

Dow argues that "the two core principles that guide retroactivity analysis in Pennsylvania tax appeals" support its position and mandate a different outcome than *Alcatel III*. Dow's Br. at 17. First, "a retroactivity analysis must be 'decided on a case-by-case basis.' In other words, each case must stand alone, because the facts and circumstances and equities may be different for each." *Id.* (quoting *Alcatel*, 326 A.3d at 821). Next, all three of the *Chevron* factors must be considered in determining whether to grant retroactive relief. Dow's Br. at 17-18. According to Dow, the third *Chevron* factor—equitable balancing—is the most important factor and in a pre-payment tax assessment case, as we have here, that analysis necessitated a ruling in its favor. We disagree.

First and foremost, Dow stresses that *Nextel*, *GM*, and *Alcatel* all involved taxpayers claiming refunds for taxes they had already paid. The procedural posture here is the converse as Dow has challenged an assessment of taxes prior to making any payments. According to Dow, this procedural distinction mandates a different result from that of *Alcatel III* because we are not dealing with a request to refund millions of dollars of taxes already "paid, budgeted, and spent" by the Commonwealth. Dow's Br. at 17 (quoting *Alcatel III*, 326 A.3d at 826). Dow claims that our Supreme Court "made it clear" in *Alcatel III* "that the remedial analysis is totally different in a tax[] uniformity case that does not require the Commonwealth to refund money already paid and spent." Dow's Br. at 25. Moreover, if this Court

allows the Commonwealth to, as Dow puts it, "collect additional taxes from Dow in the future[,]" Dow will be treated differently than "other similarly situated corporations based solely on an 'arbitrary and unreasonable classification which is prohibited by the Uniformity Clause.'" Dow's Br. at 22 (quoting *Nextel II*, 171 A.3d at 699).

Dow parses certain language from the prior NLC deduction cases in an attempt to limit their holdings and differentiate itself from those taxpayers. These attempts at wordsmithing are unavailing. Simply put, *Alcatel III* definitively decided the issue of retroactivity across the board, and it therefore controls regardless of the procedural posture of a taxpayer's appeal. The plain language of the holdings in *Alcatel III* is clear: "We hold today that *G[M II]* was erroneous, and that *Nextel* [*II*] should apply only prospectively." *Alcatel III*, 326 A.3d at 819. The Supreme Court reiterated its pointed retroactivity determination throughout the opinion, stating that the *Chevron* factors "all support prospective-only application of *Nextel*" and "that the *Nextel* decision should be given prospective effect only." *Id.* at 827, 829. This unequivocal language leaves no room for caveats or distinctions. Moreover, Dow's arguments stem from a hyper technical interpretation of the principle that retroactivity must be decided on a case-by-case basis. This principle does *not* mean that this Court should reexamine the *Chevron* factors for each taxpayer that brings a uniformity challenge for each tax year in every different procedural posture, without regard to precedent. Nonetheless, we examine the specific arguments Dow puts forward as to the *Chevron* factors.

Regarding the first factor, Dow attempts to reargue whether *Nextel II* established a new principle of law by claiming that the Commonwealth cannot show a reliance interest in reassessment cases versus refund cases, and therefore this factor

13

weighs in Dow's favor. *See* Dow's Br. at 29-30 ("the Commonwealth did not rely to its detriment with regard to the tax that Dow never paid"). We reject this contention outright as our Supreme Court made plain that it erred in *GM II* "in concluding that *Nextel* [*II*] did not establish a new principle of law[.]" *Alcatel III*, 326 A.3d at 826; *see also id.* at 825 (explaining that "[a]t its core, *Nextel* presented an issue of first impression. And our decision resolving that novel issue upset settled expectations").

As to the final *Chevron* factor, Dow argues that the *Alcatel III* Court did not weigh the equities for a uniformity challenge regarding an assessment, only for a refund, and therefore *Alcatel III*'s holding regarding retroactivity should only apply to refund cases. Granted, the language in *Alcatel III* refers multiple times to refunds and stresses that retroactive application of "*Nextel* [*II*] would require the Commonwealth to pay back millions of dollars in tax revenue that was collected and spent nearly a decade ago, in reliance on case law that this Court has since abandoned." *Alcatel III*, 326 A.3d at 826. This does *not* mean that the *Alcatel III* Court limited its balancing of the equities to *only* refund cases. To the contrary, the Supreme Court analyzed all three *Chevron* factors in their entirety, weighing not just the equities with respect to the Commonwealth's potentially having to refund hundreds of millions of dollars in taxes already spent, but also the equities with respect to favored and nonfavored taxpayers. The Supreme Court fully recognized that "while there may be inequities associated with prospective-only application of *Nextel* [*II*], such inequities seem inevitable given that the General Assembly consistently has opted to use a capped NLC deduction since 1994." *Alcatel III*, 326 A.3d at 826. After conducting a comprehensive equitable analysis, the Court categorically found that the equities "clearly weigh in favor of prospective-only

14

application of *Nextel* [*II*]." *Alcatel III*, 326 A.3d at 826. In sum, the Supreme Court examined the third *Chevron* factor globally, and this Court should not conduct a different examination as applied only to Dow.

Because *Nextel II* applies only prospectively, the NLC deduction provision was constitutional until that case was decided in 2017. That means that the Department's assessment here remains valid since it was issued to Dow in 2014.[13] Moreover, as the Board noted, the assessment was based on the nonoffending percentage cap, not the unconstitutional flat cap. SOF, Ex. G at 4. In short, Dow "owes exactly what the . . . Department previously assessed," and the Board did not err in denying Dow's assessment appeal. *Nextel II*, 171 A.3d at 705.

At times, Dow wavers as to whether it is actually requesting retroactive relief. *See, e.g.*, Dow's Br. at 18, n.58 ("The remedy that Dow seeks is not 'retroactive' insofar as it is not requesting that the Commonwealth go back and refund taxes already paid; rather[,] it is only requesting that the Commonwealth cease prospective collection activities on its assessment."). To be clear, retroactive relief is precisely what Dow seeks. Dow posits that the only appropriate and meaningful relief here for the NLC deduction provision's uniformity violation is to strike the Department's assessment in its entirety, thus allowing Dow to take an uncapped deduction and pay no CNIT for the 2013 tax year. *See, e.g.*, Dow's Br. at 12, 34 (requesting that the Court order that the assessment be stricken, which would result in Dow's owing no tax); *id.* at 24-25 ("if the [Commonwealth] is allowed to force Dow to pay tax, it will cause the very same type of non-uniform treatment that the Court found to be impermissible in *Nextel* [*II*]"). However, our Supreme Court

---

[13] Further undercutting Dow's arguments is the fact that it specifically requested that the Board stay its petition for reassessment pending the final outcome of *Nextel*. *See* SOF ¶ 17; SOF, Ex. G at 3.

15

has specifically rejected this approach, repeatedly holding that the appropriate remedy for the uniformity violation was to sever the flat cap and limit corporations to a percentage deduction.[14]  *See Nextel II*; *Alcatel III*.[15]

Finally, Dow claims that because it is not requesting a refund of taxes already paid and spent, this matter is more akin to, and should follow the holding of *Sands Bethworks Gaming, LLC v. Pennsylvania Department of Revenue*, 207 A.3d 315 (Pa. 2019), rather than *Alcatel III*.  However, *Sands Bethworks* is both legally and factually distinguishable.  As for the legal issues, *Sands Bethworks* involved due process and equal protection claims regarding a completely different statute, and the Supreme Court never reached the casinos' uniformity challenge.  As for the facts, under the statute in *Sands Bethworks*, the assessments paid by the casinos were set aside during the pendency of the litigation, so not only were they never distributed, but they were also never part of the public fisc.  Put simply, there is no reason to rely upon *Sands Bethworks* when we have precedent that is squarely on point.

---

[14] Dow does not raise a due process claim or specifically cite to the Supreme Court's decision in *McKesson*.  It does, however, somewhat mingle its uniformity argument with an assertion that the Court must equalize the positions of taxpayers who benefitted from the NLC deduction cap and those that were disadvantaged by it, i.e., favored and nonfavored taxpayers.  *See* Dow's Br. at 31 (arguing that this Court should advance the purpose of the principle "announced in *Nextel* [*II*] (that is, that all corporations should be treated equally regardless of the level of their income) by issuing a decision that 'enforce[s]' actual tax uniformity for the relevant tax year.  Here, that means striking the tax assessed against Dow so that Dow is treated the same as the 13,639 other corporations who earned no economic income overall.").  To this end, we note that "*McKesson* only requires that we award backward-looking relief when our decision striking down the unconstitutional tax applies retroactively."  *Alcatel III*, 326 A.3d at 827.

[15] We note in addition that the Commonwealth has not raised the question whether treating taxpayers seeking refunds different from taxpayers seeking to avoid assessments would create a non-uniformity of its own.  In light of our disposition here, we need not address that issue.

## V. Conclusion

To summarize, the Supreme Court in *Alcatel III* definitively decided the issue of the retroactivity of *Nextel II* and that precedent controls regardless of the procedural posture of a taxpayer's appeal, i.e., whether the corporation is seeking a refund or challenging an assessment. Because the Department issued the assessment here prior to *Nextel II*, the NLC deduction provision was constitutional, and the assessment was valid. Accordingly, we affirm the Board.

                                                       _____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dow Chemical Company, :
                    Petitioner :
                               :
          v.                   :   No. 892 F.R. 2018
                               :
Commonwealth of Pennsylvania,  :
                    Respondent :

# **O R D E R**

AND NOW, this 22nd day of December, 2025, the order of the Board of Finance and Revenue is hereby AFFIRMED.  Unless exceptions are filed within thirty (30) days pursuant to Pa.R.A.P. 1571(i), this Order shall become final.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita